MILDRED KELLMAN, Indiv. and as Ex'x of the Estate of Morrie Kellman, Deceased, Plaintiff-Appellant, v. TWIN ORCHARD COUNTRY CLUB, Defendant-Appellee (Cornell and Fornell, Inc., Defendant).

First District (4th Division)   No. 1—88—3655

Opinion filed June 28, 1990.—Rehearing denied October 9, 1990.

Randall F. Peters & Associates, and James J. Reidy, Ltd., both of Chicago (Randall F. Peters, James J. Reidy, and Richard L. Wattling, of counsel), for appellant.

Victor J. Piekarski and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the widow of decedent Morrie Kellman and executrix of his estate, brought suit under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1) and the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6). Plaintiff alleged that the decedent's fatal fall was a result of careless and negligent acts by Twin Orchard Country Club (hereinafter referred to as Twin Orchard) in designing, constructing and maintaining a shower stall and basin area in the men's locker room. Twin Orchard moved for summary judgment and to strike the affidavit given by Michael Kellman, decedent's son. The trial court granted both motions. We affirm.

On June 2, 1985, Morrie Kellman, decedent, was attending "Family Day" at Twin Orchard. Robert Stempel, a Twin Orchard club member, testified that he saw Morrie walking to the shower that evening at about 6 p.m. Stempel assisted Morrie, who appeared to be unsteady on his feet. Morrie was reeling and used the wall to keep himself from falling. Morrie went into the first shower stall, and Stempel proceeded to another shower stall. The shower facilities in the men's locker room appeared to have been used a great deal that day.

Stempel stated that the shower facility contained approximately 16 shower stalls, which were divided equally on both sides of a central corridor. Each stall consisted of the shower basin area, which was in the rear of the stall, and a changing area, which was in the front portion of the stall. A curtain separated the shower basin area from the changing area, and a door with a metal frame and translucent panel separated each stall from the central corridor.

Stempel further testified that he had begun showering in his stall when he heard two thuds. He called out Morrie's name but did not receive an answer so he got out of his shower and ran down to the stall where he last saw Morrie. He called out to Morrie again, and when there was no answer, he looked through the translucent doors of the shower stall and saw Morrie lying on the floor. Morrie was ly-

ing on his stomach, facedown, with his arms next to his sides, his legs on the curb that separates the shower basin from the changing area, and his feet pointing down in the shower basin. Morrie's head was positioned in such a manner as to prevent Stempel from opening the door to assist him. Stempel ran out of the shower area to get help and returned with two other club members. Someone ripped the shower door from its hinges, and Morrie was removed from the shower area and placed in the hallway, where cardiopulmonary resuscitation was administered. Morrie was unconscious. His body was naked and wet, there was soap in his hair, and there were abrasions about his face and head. The water from the shower was still running. An ambulance arrived and Morrie was carried to Good Shepherd Hospital. Upon arriving at the emergency room of the hospital, Morrie was diagnosed as suffering from a fracture of his cervical spine and quadriplegia.

Michael Kellman testified that he was in his father's hospital room at approximately 8 a.m. on June 3, 1985, when Morrie regained consciousness. He was paralyzed and unable to speak. The younger Kellman established a system of communication with his father whereby he asked him short, specific, closed-ended questions to which he could respond by blinking his eyes once to indicate "Yes" and twice to indicate "No."

Plaintiff offered an affidavit to the trial court, attested to by Michael Kellman, which states in pertinent part as follows:

"I then asked my father if he knew what had happened to him in the shower stall at the club house of COUNTRY CLUB and he blinked his eyes once.

*** I asked my father whether he had blacked out or was unconscious at the time he fell and my father blinked his eyes twice.

*** I then asked my father if he had slipped in the shower and he blinked his eyes once.

I then asked my father whether the shower floor was slippery and he blinked his eyes once. I then observed my father mouth the words, 'I slipped on the floor of shower.' I then told my father I would repeat the words I understood him to say and asked him to blink his eyes once for 'yes' and twice for 'no.' I repeated the words he had spoken, being 'slipped on floor in shower' and he blinked his eyes once.

*** I then asked my father, 'Was it the slippery floor in the shower and [your] slipping in the shower that had been what caused [you] to fall?' and he blinked his eyes once."

There were numerous affidavits by medical experts for plaintiff and Twin Orchard which opined that Morrie was injured and ultimately died as a result of falling in the shower stall. Plaintiff also introduced the affidavit of Robert J. Stanis, an engineer and expert in the area of safety of industrial and sporting facilities, specifically lavatory and shower arrangements. Stanis inspected the shower facilities at Twin Orchard and opined that the shower stall in which the decedent had fallen was unreasonably dangerous. Stanis testified by affidavit that the shower floor would have become slippery and dangerous when wet and soapy; the number of grab-bars and grips in the shower stall were inadequate; the number of adhesive strips on the shower basin floor were inadequate and improperly placed.

In its motion for summary judgment, Twin Orchard argued that there were no eyewitnesses to the decedent's fall and that plaintiff was unable to prove the cause of the fall. In its motion to strike Michael Kellman's affidavit, Twin Orchard maintained that the affidavit contained inadmissible evidence.

The circuit court granted both motions and held that Michael Kellman's affidavit which recited his father's communication did not satisfy the spontaneous utterance exception to the hearsay rule and, therefore, could not be used to establish a causal connection between defendant's alleged negligence and decedent's fall.

On appeal, plaintiff argues that the Kellman affidavit shows communication by Morrie immediately after regaining consciousness and therefore is admissible as *res gestae* or an excited utterance and precludes summary judgment in favor of Twin Orchard. Plaintiff also argues that the circuit court erred in (1) granting summary judgment in favor of Twin Orchard which failed to meet the burden required by a successful motion for summary judgment and (2) applying an incorrect standard to determine whether plaintiff's evidence was sufficient to defeat Twin Orchard's motion for summary judgment.

■■ We do not agree with plaintiff's contention that the Kellman affidavit qualifies as a *res gestae* exception to the hearsay rule. *Res gestae* is no longer a term recognized by the Illinois courts. The contemporary hearsay rule recognizes "spontaneous declarations" or "excited utterances" as properly admissible exceptions to the rule. (*People v. Poland* (1961), 22 Ill. 2d 175, 180.) A statement, made by one not testifying at trial, will be recognized as a spontaneous declaration or excited utterance when there is (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) an absence of time to fabricate; and (3) a relationship between the statement and the circumstances of the occurrence. (*Poland*, 22 Ill. 2d at

181.) Unsolicited spontaneous declarations may be admitted (see *People v. Poland* (1961), 22 Ill. 2d 175; *People v. Freeman* (1969), 113 Ill. App. 2d 7; *Burnett v. Caho* (1972), 7 Ill. App. 3d 266; *Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563). Also, spontaneous declarations made in response to a single, general, nonsuggestive, nonleading question, *i.e.*, "What happened?" have been admitted. (See *Thomas v. Goodman* (1977), 52 Ill. App. 3d 774; *J.L. Simmons Co. v. Firestone Tire & Rubber Co.* (1984), 126 Ill. App. 3d 859.) The present case is distinguished from these situations, since Kellman's questions to his father were both leading and suggestive. Questions which are suggestive as to the cause of the event serve to deprive the declaration of its spontaneity and possibly afford the declarant the opportunity and time to fabricate.

██ In the present case, the trial court expressly stated that it gave a liberal construction to the Kellman affidavit but was unable to accept the affidavit which recited Morrie's utterance, even though it was made immediately upon his regaining consciousness. This court agrees that the nature of affiant's questioning of Morrie may have afforded his father time and opportunity to fabricate the events which caused his injuries; therefore, the second requirement of the *Poland* test was not satisfied and the Kellman affidavit does not qualify as admissible testimony under the spontaneous utterance exception to the hearsay rule. We are not suggesting that the fact that an interval of time passed between the time of the accident, which rendered Morrie unconscious, and when consciousness was regained, or that his communication by blinking his eyes and moving his lips made the declaration inadmissible. We believe that the trial court properly examined the circumstances surrounding this out-of-court declaration and the manner in which it was made. Therefore, we agree with the trial court's reasoning that the declaration in issue was, in fact, solicited and made in response to specific questions.

██ Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)) provides that affidavits offered in opposition of a motion for summary judgment shall consist of facts admissible in evidence. Since the Kellman affidavit contains decedent's inadmissible hearsay declaration, it does not meet the requirements of a summary judgment affidavit and cannot, therefore, be considered in opposition to Twin Orchard's motion for summary judgment. (*Board of Education v. Gorenstein* (1989), 179 Ill. App. 3d 388, 394.) Plaintiff improperly relies upon *Peterson v. Cochran & McCluer Co.* (1941), 308 Ill. App. 348. Although that case holds that it is the trial court's determination of whether a declaration qualifies as a spontaneous declaration or *res gestae*, it does not

discuss the admissibility of spontaneous declarations which are hearsay. That is distinguished from the case at bar where the issue is whether an affidavit which contains hearsay statements qualifies as admissible evidence when offered in opposition to a motion for summary judgment. It was not error for the trial court to rely on Supreme Court Rule 191(a) and determine that the summary judgment affidavit which contained hearsay declarations did not qualify as admissible evidence.

Next, plaintiff alleges that Twin Orchard failed to meet the burden required to obtain summary judgment. Plaintiff suggests that it was the burden of defendant to establish that, based on the facts of this case and the law, no verdict for plaintiff could possibly stand. "A party moving for summary judgment is not required to prove its case or to disprove the nonmoving party's case. [Citation.] Rather, the movant meets its burden by establishing the absence of a genuine issue of material fact." (*Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 619.) Defendant's alleged negligence must be the legal cause of decedent's injuries; otherwise, plaintiff is not entitled to recover. The plaintiff must demonstrate proximate cause by establishing with reasonable certainty that defendant's acts or omissions caused injury to the deceased. The occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact. (*Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d at 619.) We agree with plaintiff's contention that circumstantial evidence may be sufficient when an inference may reasonably be drawn from it. But facts will not be established from circumstantial evidence where the circumstances are unrelated and allow more than one conclusion to be drawn. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396.) Damages cannot be awarded on mere speculation, guess, or conjecture as to what probably happened to cause decedent's injuries and death. *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 818.

Plaintiff argues that summary judgment was improperly entered as the circumstantial evidence here is sufficient to raise an inference that decedent's injuries and subsequent death were caused by defendant's negligence in maintaining its shower stall and basin in an unreasonably dangerous condition. We find nothing in the record from which it can be inferred that any alleged act or omission of defendant was the proximate cause of decedent's injuries. It is plaintiff's position that the evidence shows Morrie fell while standing in the shower basin; but, there is no evidence as to the cause of the fall. In fact,

plaintiff was asked repeatedly in a deposition if she knew what caused the decedent's fall and she admitted that she did not know. Plaintiff also stated in her deposition that she did not have actual knowledge of the condition of the shower stall immediately following the incident and that she failed to examine or inspect the shower area. Plaintiff stated that her husband told her that he had slipped, but she did not know the cause of the slip or precisely where he slipped. According to plaintiff's own statements, she was unable to produce any evidence (since she admitted that she knew of no witnesses) to show that even if there were some defect in the shower basin, this defect had caused decedent to fall. Plaintiff relies heavily upon expert testimony to establish the condition of the shower stall and the manner in which Morrie fell. The trial court accepted the deposition of Stanis and viewed it in the light most favorable to plaintiff despite questioning Stanis' qualifications to render an opinion on the issue of slip resistance. As plaintiff states, medical testimony established that decedent had fallen forward with accelerating speed and that the injuries received were consistent with slipping and falling in a shower stall. Unfortunately, this does not address the issue of what had caused decedent to slip and fall. The possibility that the alleged unreasonably dangerous shower stall and basin had caused decedent to slip and fall is insufficient to establish a causal relationship between defendant's alleged negligence and decedent's injuries.

Finally, plaintiff argues that the trial court applied an incorrect standard in determining that circumstantial evidence offered by plaintiff was insufficient to defeat Twin Orchard's motion for summary judgment. The standard to be used by the trial court is whether there is an issue of fact which precludes summary judgment in favor of the movant and whether pleadings, depositions and other evidence show that, at trial, a verdict would have been directed. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 816-17.) The court charged with determining whether the movant is entitled to summary judgment will construe the pleadings, depositions and affidavits strictly against the movant and liberally in favor of the opponent. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398.) Plaintiff relies on *Wright v. Stech* (1972), 7 Ill. App. 3d 1068, as being analogous with the case at bar, since in both cases there were no eyewitnesses and, therefore, no direct evidence to prove causation. However, in *Wright*, testimony concerning the facts could lead the jury to reasonably conclude that the cause of Wright's fall was the condition of the dark and littered stairwell. In the present case there was testimony that Morrie had been unsteady on his feet and required assistance to reach the shower area. Addi-

tionally, he used the locker room walls to steady himself and prevent falling. Even without consideration to the Kellman affidavit, we believe that it is reasonable to conclude that several factors may have caused decedent's fall. Again, the circumstantial evidence, *i.e.*, the condition of the shower stall, the position of decedent's body after the fall, and the medical testimony, does not establish with reasonable certainty that decedent's injury was the proximate result of defendant's negligence. Since plaintiff did not sustain her burden of making a *prima facie* case, the trial court properly granted defendant's motion for summary judgment.

Accordingly, we hold that the entry of summary judgment was proper in this case and we affirm the judgment entered by the trial court.

Affirmed.

McMORROW, P.J., and LINN, J., concur.