ROBERT J. MAJETICH, Independent Ex'r of the Estate of Edythe B. Majetich, Deceased, Plaintiff-Appellant, v. P.T. FERRO CONSTRUCTION COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—08—0104

Opinion filed April 1, 2009.

Brian T. Nash (argued), Robert A. Clifford, and Robert P. Sheridan (argued), all of Clifford Law Offices, P.C., of Chicago, for appellant.

William V. Kozol, Scott Pyles (argued), and Meghan E. Preston, all of Rathbun, Cservenyak & Kozol, LLC, of Joliet, for appellee P.T. Ferro Construction Company.

Anthony J. Ritrovato (argued), of Maisel & Associates, of Naperville, for appellee George J. Kontos.

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiff, the son of decedent Edythe B. Majetich and executor of her estate, brought a negligence suit against defendants, George Kontos, owner of a commercial strip mall located in Joliet, and P.T. Ferro Construction Company. Plaintiff alleges that both defendants were negligent in the replacement of the parking lot pavement and as a result of their negligence, Edythe Majetich fell, sustained injuries, and

ultimately died. After discovery, both defendants moved for summary judgment on the basis that there was insufficient evidence of proximate cause to connect any alleged negligence on their part with the fall. The trial court entered summary judgment in favor of both defendants. Plaintiff appeals.

## BACKGROUND

On August 10, 2004, Edythe B. Majetich went to the Town and Country Plaza in order to visit the Sir Speedy print shop. The parking lot of the plaza was under construction. The old pavement had been removed. The parking lot had not yet been repaved. There was an allegedly one- to two-foot step up from the parking lot to the sidewalk in front of the print shop. As Edythe approached the print shop, she fell. There were no eyewitnesses to the fall. Edythe died 11 days later from head injuries allegedly caused by the fall.

Plaintiff, Robert J. Majetich, filed a complaint against P.T. Ferro Construction Company (Ferro) and George J. Kontos, d/b/a Town & Country Plaza, alleging that due to their negligence, his mother fell and suffered injuries that led to her death. Plaintiff's lawsuit seeks damages against defendants under both the Wrongful Death Act (740 ILCS 180/1 (West 2004)) and the Survival Act (755 ILCS 5/27—6 (West 2004)).

Ruth Hopkins, Edythe's cousin, called her on the morning of August 11, 2004, between 11 a.m. and 12 p.m. Ms. Hopkins testified that during the conversation, Edythe told her that she had been to the copy shop earlier that morning. After Edythe parked her car, she discovered that she had to walk across a rough surface because the parking lot had been disturbed. Edythe then said to her that when she reached the cement sidewalk in front of the copy place, she fell. Edythe told Ruth that the step in front of the copy shop was a deep step and that it was higher than normal. Ms. Hopkins, however, testified that she could not honestly remember the exact words that Edythe used when she spoke to her regarding how the accident occurred. Edythe also mentioned to Ruth that she had hit her head, sustained a black eye and some scrapes, and broken her glasses.

Amy King, Edythe's granddaughter, was the one to discover her after she lost consciousness. She testified that she had attempted to call Edythe several times and there was no answer. She went to her grandmother's house and found her unconscious in a chair in front of the television. She explained that she saw a large bruise on her left eye and a cut in the area of the eye. She also observed her grandmother's broken glasses on the table next to her. There was blood on her grandmother's jacket. Amy described her grandmother as active, independent, and a competent driver.

Robert Majetich, Edythe's son, also provided testimony. Although he was out of town on the date Edythe fell, when he saw her in the hospital, he observed she had a black eye, several bruises on her face, and a broken nose. He was not aware of any problems with her balance nor was he aware that she ever fell during the last five years. He explained that she did not use her cane at home, but she sometimes used it outside the house if she was walking long distances.

Dr. Joseph Hindo, Edythe's physician, testified that she suffered from chronic depression and anxiety and had symptoms consistent with transient ischemic attacks (TIAs), and that these TIAs are episodes that involve temporary loss of speech, blurred vision, dizziness, and headaches. Furthermore, Dr. Hindo stated that Edythe's medical records suggested Edythe was suffering from macular degeneration, which causes progressive vision loss.

Dr. Hindo testified that in 2002, Edythe was seen by a neurologist and it was his opinion that she suffered from essential tremors, early Alzheimer's, cervical spondylosis, and hypertension. Tremors can affect one's balance and ability to walk. Dr. Hindo issued Edythe a letter for her to obtain a disability parking sticker due to the fact she was using a cane. She was allegedly using a cane because her ability to walk was severely limited due to arthritis. Dr. Hindo opined that as of June 2004, Edythe still needed the "assistance of another person, prosthetic device or wheelchair" due to her limited ability to walk as a result of the arthritis.

Dr. Paul Bertrand, a licensed neurologist, testified that he began seeing Edythe as a patient in February 2002. He explained that she was suffering from shaking in her head and in her hands. The doctor's notes indicated that Edythe was having difficulty with balance and that she related a history of falling. In April 2002, Edythe told Dr. Bertrand that she was unstable on her feet, and his notes reflected several other falls that year. Dr. Bertrand testified that the tremor condition is a permanent progressive condition that could get worse at times.

Robin Wilson, the manager of a tanning salon in the strip mall, testified regarding her interactions with Edythe after the fall. Wilson explained that she walked outside after she was alerted by an employee that a woman had fallen outside. Edythe looked frazzled and scared and was bleeding from the left temple area. Edythe told her that she was reaching for the pole to try and help herself up the step. Edythe's broken glasses were on the sidewalk.

Ania Scheiman, an employee of the copy shop in the strip mall, saw Edythe walk in the copy shop. She testified that Edythe said to her in a joking manner, "Where were you when I needed you?"

Scheiman also stated that she observed fresh blood on Edythe and on the concrete outside. Edythe told her the step was too big where she parked and she noticed there was a pole to hold on to so she could make it up the step.

Finally, Paul Manning, an employee of the copy shop, testified that he first learned of the incident when he returned to the front counter of Sir Speedy from the bathroom in back and saw Edythe. He asked Edythe if she was okay and what had happened. Edythe said the curb looked too high so she walked to the center where there were two poles because she thought maybe leaning up against one of the poles would help her up the curb. Edythe explained she then reached for the pole and fell. Manning, however, stated that Edythe did not tell him what actually caused her to fall.

Defendants each filed a motion for summary judgment. They argued that plaintiff could not prove the proximate cause of decedent's fall.

The trial court heard oral argument on January 9, 2008, and on January 24, 2008, entered an order granting summary judgment to both defendants. The trial court found, *inter alia*:

> "Edythe B. Majetich was an elderly woman who had been diagnosed with tremors, early Alzheimer's, and macular degeneration. She had a history of falls and had been told to use a cane while walking. On August 11, 2004, she drove through barricades which marked off the parking lot of Town & Country Plaza. The parking lot was being resurfaced by P.T. Ferro Construction Company. The plaintiff drove her vehicle onto this gravel parking lot and fell after exiting her vehicle, hitting her head. Later that day, she was found at home in a coma. Ms. Majetich never regained consciousness and died a few weeks later. She was approximately 89 years old at the time of her death. The only statements the plaintiff made at the scene were that she had reached for a pole and fell. There were no eyewitnesses to the fall. There was some question as to whether plaintiff fell on the sidewalk in front of the store which apparently was not under construction or the parking lot adjacent to the sidewalk which was under construction by Ferro."

The trial court concluded that no genuine issue of material fact existed to establish that any negligence on the part of the defendants caused or contributed to the death of plaintiff. We affirm.

## ANALYSIS

On appeal, plaintiff argues the trial court erred in finding that no genuine issue of material fact existed as to the proximate cause of decedent's fall. We review the trial court's grant of summary judgment *de novo. McNamee v. State*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159

(1996); *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214, 220, 868 N.E.2d 374 (2007).

A motion for summary judgment can only be granted where there are no genuine issues of material fact and the right of the moving party to judgment is free and clear from doubt. *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 816, 416 N.E.2d 328 (1981). It is well settled that the court charged with determining whether the movant is entitled to summary judgment is to construe the pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1981); *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002).

In a negligence action, the plaintiff must prove: (1) the defendant owed a duty of reasonable care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injury. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 1178 (2001). Proximate cause has two elements: cause in fact and legal cause. Cause in fact concerns whether the defendant's conduct is a material factor in bringing about the injury. A defendant's conduct is a material factor in bringing about the injury if, absent the conduct, the injury would not have occurred. Legal cause deals with a question of foreseeability. *Phillips v. Budget Rent-A-Car Systems, Inc.*, 372 Ill. App. 3d 155, 165, 864 N.E.2d 709, 717 (2007).

The existence of proximate cause cannot be established by speculation, surmise, or conjecture. *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 540, 584 N.E.2d 235, 241 (1991). Absent affirmative and positive evidence that defendant proximately caused plaintiff's injuries, a plaintiff fails to establish the existence of a genuine issue of material fact. *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 137, 606 N.E.2d 641 (1992).

Plaintiff argues that summary judgment was improperly entered as the circumstantial evidence in this case is sufficient to raise an inference that decedent's injuries and subsequent death were caused by defendants' negligence in creating and maintaining a dangerous condition. It is plaintiff's position that the evidence shows Edythe approached an allegedly one- to two-foot stair where a handicapped ramp was previously located, tried to step up with the assistance of a pole, and tripped and fell. Specifically, plaintiff directs us to the statements made by his decedent to employees of the strip mall soon after the alleged fall.

Plaintiff is correct in arguing that circumstantial evidence may be sufficient when an inference may be reasonably drawn from it. Facts,

however, will not be established from circumstantial evidence where more than one conclusion can be drawn. *Mort v. Walter*, 98 Ill. 2d 391, 396, 457 N.E.2d 18 (1983). If plaintiff relies upon circumstantial evidence to establish proximate cause to defeat a motion for summary judgment, the circumstantial evidence must be of such a nature and so related as to make the conclusion more probable as opposed to merely possible. *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 398, 742 N.E.2d 401 (2000).

Defendants argue that these postfall statements by Edythe are hearsay and, therefore, inadmissable. Plaintiff, on the other hand, argues that they would be admitted under the excited utterance exception to hearsay. Assuming, *arguendo*, the admissibility of the statements, we find that they provide circumstantial evidence only that defendants' negligence was a possible cause rather than the probable cause of Edythe's injuries. Therefore, we do not find it necessary to analyze the admissibility of the decedent's statements.

Plaintiff cites a number of cases that he finds to be analogous to the case at bar with the three most important being *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 633 N.E.2d 1307 (1994), *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 645 N.E.2d 207 (1993), and *Wright v. Stech*, 7 Ill. App. 3d 1068, 288 N.E.2d 648 (1972). As in the case at bar, in each of these cases, there were no witnesses to the decedent's falls, yet summary judgment or a directed verdict was either denied or overturned. Defendants argue, however, that all three cases are easily distinguishable.

In *Ordman*, plaintiff filed suit alleging the plaintiff's decedent died as a result of slipping and falling on an unnatural accumulation of ice on defendant's property. The issue in *Ordman*, however, was not whether defendant's negligence proximately caused the injury, but whether defendant voluntarily undertook a duty to remove ice and snow. When reversing the motion for summary judgment ordered by the trial court, the *Ordman* court found the defendant did owe the plaintiff a duty of care. When discussing the cause of the fall, the court noted there were no other possible explanations to why the decedent fell with the exception of this large patch of ice. Additionally, the court explained that the issue of proximate cause was not raised at the circuit court level and thus was not fully litigated in this case. *Ordman*, 261 Ill. App. 3d at 283.

In *Block v. Lohan Associates, Inc.*, the widow of a deceased construction worker filed suit against a number of contractors after decedent died when he fell from a ladder during the construction of an office complex. Again, no one witnessed decedent's fall; however, testimony of plaintiff's preoccurrence and postoccurrence witnesses on

the scene provided circumstantial evidence of proximate cause. Summary judgment was granted on behalf of the defendants, and the appellate court reversed and remanded. *Block*, 269 Ill. App. 3d at 750-51.

*Block* is distinguishable from the case at bar. In *Block*, the plaintiff was able to provide testimony from co-workers detailing the moments leading up to and within seconds after the decedent's fall. Secondly, plaintiff offered a reconstruction expert to opine how it was that the decedent fell, thus offering direct opinion testimony on the issue of proximate cause. *Block*, 269 Ill. App. 3d at 757.

In *Wright v. Stech*, plaintiff's decedent died after falling down a dark staircase that was found to be littered with garbage and debris. The trial court granted a directed verdict in favor of defendant and plaintiff appealed. The appellate court reversed, holding that from the facts, the jury could reasonably have concluded that the decedent fell down the stairs and that her fall was caused by the littered condition of the dark stairway. This case is distinguishable due to the fact that the court stated that decedent was "apparently in good health" and thus the jury could reasonably have concluded that decedent's fall was caused by the littered condition of the dark stairway. *Wright*, 7 Ill. App. 3d at 1070.

Defendants argue, and we agree, that the facts of the case at bar are most analogous to those of *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 560 N.E.2d 888 (1990). In *Kellman*, plaintiff filed suit against the defendant country club for the death of her husband, who was found on the floor of a shower stall. Plaintiff alleged that the country club was negligent in the design, construction, and maintenance of the shower stall. The decedent was seen to be slightly wobbling as he entered a shower stall. While in another shower stall, decedent's friend heard two thuds. He looked through the door and saw the decedent lying on the floor. *Kellman*, 202 Ill. App. 3d at 970-71.

Plaintiff submitted affidavits of medical experts to establish that plaintiff died as a result of falling on the shower floor. Additionally, an engineer testified that he inspected the shower facilities and opined that the shower stall in which decedent had fallen was unreasonably dangerous because it was unreasonably slippery and a number of grab bars and grips in the shower stalls were inadequate. *Kellman*, 202 Ill. App. 3d at 972.

Defendant moved for summary judgment asserting that plaintiff could not establish proximate cause as a matter of law. Despite the affidavits from plaintiff's expert and decedent's physicians, the trial court granted summary judgment in favor of the defendant and the plaintiff appealed. In affirming the lower court's judgment in favor of

the defendant, the court held that there was nothing found in the record from which it can be inferred that any alleged act or omission on the part of defendant was the proximate cause of decedent's injuries. The court stated that "[t]he possibility that the alleged unreasonably dangerous shower stall and basin had caused decedent to slip and fall is insufficient to establish a causal connection between defendant's alleged negligence and decedent's injuries." *Kellman*, 202 Ill. App. 3d at 975.

As in *Kellman*, we find nothing in the record from which it can be inferred that any alleged act or omission of defendants was the proximate cause of decedent's injuries. Additionally, there is ample testimony from decedent's physicians regarding her medical conditions, which include tremors, macular degeneration, and a history of falling. In Illinois, proper inference cannot be based on mere conjecture or speculation as to what possibly happened to cause the injury. Again, the circumstantial facts must be of such a nature and so related as to make the conclusion reached more probable as opposed to merely possible. *Wrobel*, 318 Ill. App. 3d at 398.

In this case, no one saw Edythe fall and the only thing she said afterwards was that she noticed a high step, reached for a pole, and fell. There is simply insufficient evidence to determine whether she lost her balance due to one of her medical conditions, or to rule out that she tripped or slipped for any one of the other countless reasons that people fall. As in *Kellman*, plaintiff can only present evidence that decedent's injuries are possibly related to the alleged negligence of defendants and, therefore, fails to meet his burden on causation.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

CARTER and McDADE, JJ., concur.