DAWN RADTKE, Plaintiff-Appellant, v. SCHAL-BOVIS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—01—1934

Opinion filed February 20, 2002.

Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago (Curt N. Rodin, of counsel), for appellant.

Patrick T. Garvey, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Dawn Radtke filed suit against defendant Schal-Bovis after she tripped and fell while working on a construction project at Navy Pier. Defendant was the general contractor in charge of the construction project. Plaintiff's complaint alleged Structural Work Act (740 ILCS 150/1 *et seq.* (West 1994)) violations and negligence. The trial court granted summary judgment in defendant's favor, finding plaintiff could not establish a genuine issue of material fact as to the cause of her fall. On appeal, Radtke contends the trial court erred in granting summary judgment. We agree. We reverse and remand for further proceedings.

FACTS

On October 5, 1994, plaintiff was working for L/C/B Tri-Venture as a laborer on a construction site at Navy Pier. L/C/B Tri-Venture was a subcontractor on the project. She was on scaffolding, carrying mortar to bricklayers, when she tripped and fell. Plaintiff filed suit against defendant alleging violations of the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1994)). Plaintiff's complaint alleged her injuries were caused by the scaffolding's "improperly placed crank shaft handle."

Several of plaintiff's coworkers were deposed. During his deposi-

tion, Kevin Zesch testified he was employed by defendant. Zesch was the senior field superintendent on the Navy Pier site. He was responsible for coordinating the schedule, for logistics, and for plans with all subcontractors at that site.

Zesch said a Morgan scaffold was a scaffold used by masons and laborers. A jack is used to elevate the scaffold as the laborers progress up the wall. The jack handle normally sits in an upright position, out of the way of the path on the scaffold. Morgan scaffolds were used in the project site where plaintiff worked. The laborers typically erected the scaffolds. Zesch testified defendant did not inspect the scaffolds after they were erected. However, if any of defendant's supervisors noticed something unsafe about the scaffold, work would stop until the problem was rectified. Zesch agreed that Schal-Bovis was responsible for safety at the jobsite.

Norman Graves, who was Tri-Venture's foreman at the project on the day plaintiff was injured, was deposed. He testified plaintiff was working as a laborer on the day she was injured. She was putting out mortar for the bricklayers at the jobsite. Graves characterized Morgan scaffolding as unsafe. He said he complained about the scaffolding several times. Graves testified that there were problems with broken jack handles. He complained about it, but the problem never was fixed. Graves said the jack handles fell out of their upright position and into the walking path on the scaffolding if they were not working properly.

John Kentgen, a laborer who was working with plaintiff on the day she fell, was deposed. Kentgen testified plaintiff was a member of his crew. Kentgen said he was walking toward plaintiff when she fell. He was about 10 to 12 feet away from her. Kentgen said plaintiff was carrying a shovel full of mortar when she tripped. He did not see what plaintiff tripped on.

Kentgen said plaintiff told him "right away" that she tripped on a jack handle. Kentgen said when he saw plaintiff fall, he knew she tripped over the jack handle because "[t]hat's the only explanation." Kentgen testified he had tripped over defective jack handles several times during the project.

During her deposition, plaintiff testified there were problems with the jack handles on the scaffolding for as long as she worked at the project site. Plaintiff said the jack handles would fall into the path where the laborers walked.

Before the accident occurred, plaintiff was shoveling mortar onto the mortarboards for the bricklayers. Plaintiff testified she used a shovel to carry the mortar. She had mortar in the shovel when the accident occurred. She was looking at the mortar in her shovel to make sure the mortar was not falling out of it. She did not remember being

distracted by anything before she fell. She believed she tripped on the jack handle. She believed this because she spoke to several people who saw the accident. The people she spoke with said she fell on the jack handle. Plaintiff also testified she had a red mark across her foot after the accident occurred.

Plaintiff said that at the time she fell, she was not sure whether she fell as a result of uneven planking or because of a jack handle. When she fell, the handle of the shovel was shoved into her chest.

During his deposition, Charles Franklin testified he worked on the Navy Pier project with plaintiff. He was working as a laborer. Franklin said he complained to the project supervisors about bad jacks on the scaffolding. A jack that was working properly would stand straight up and would not extend over the walkway of the scaffolding. When they were broken, the jack handles would fall down onto the walkway.

Franklin testified he had a clear, unobstructed view of plaintiff's fall. When she fell, Franklin was about 20 feet away from plaintiff. He was facing her. Franklin was walking toward plaintiff when she fell. Plaintiff was carrying a shovel. Though Franklin did not see plaintiff's foot come into contact with the jack handle before she fell, he assumed the handle caused her fall because it was in the pathway and plaintiff fell near the handle. Franklin testified there was not any overlapping planking in the area where plaintiff fell. Franklin said, "[I]t couldn't have been nothing but the jack handle. There was nothing else out." Franklin said the jack handle was one of the damaged handles that constantly fell over the walkway. He said there was nothing else on the walkway that plaintiff could have tripped over.

Plaintiff's expert witness, Dennis Puchalski, said he believes plaintiff tripped and fell on a defective jack handle. He based this opinion on plaintiff's description of the accident.

Defendant brought a motion for summary judgment, in part arguing plaintiff could not prove her injuries were proximately caused by any unsafe condition of the scaffolding. That is, none of the witnesses to the accident could state, with certainty, that the fall was caused by a defective jack handle. The trial court granted the summary judgment motion:

> "[P]laintiff cannot create a genuine issue of material fact as to the cause of her fall. A review of all the evidence presented indicates that no one can say they saw what caused plaintiff to fall. *** [T]here is no rule against basing an inference on another inference, but reasonable inferences other than the jack handle causing plaintiff's fall can be drawn from plaintiff's and Charlie Franklin's testimony. Hence, there is no circumstantial evidence that creates an issue of fact as to the jack handle causing the fall."

Plaintiff filed a motion to reconsider, which the trial court denied.

DECISION

Plaintiff contends a genuine issue of material fact exists as to whether a fallen jack handle caused her fall. Defendant responds by asserting that while plaintiff established the possibility that the handle may have caused the fall, she failed to establish the probability that it did. According to defendant, in order to establish sufficient proximate cause to survive the summary judgment stage, plaintiff's evidence must demonstrate with reasonable certainty that defendant's negligence caused plaintiff's injury.

■ Review of the trial court's ruling on a motion for summary judgment is *de novo*. *Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 135, 669 N.E.2d 645 (1996). Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lajato*, 283 Ill. App. 3d at 135. The purpose of the summary judgment procedure is not to decide the facts but to ascertain whether a factual dispute exists. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1070-71, 603 N.E.2d 1215 (1992).

■■ In pleading negligence, the plaintiff had to allege facts showing the defendant (1) owed her a duty of due care; (2) breached that duty; and (3) that this breach was the proximate cause of her injuries. *Turner v. Roesner*, 193 Ill. App. 3d 482, 488, 549 N.E.2d 1287 (1990). The Structural Work Act codifies the duty that the person who has charge or control of the work site owes to workers:

> "All scaffolds *** erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, *** placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." 740 ILCS 150/1 (West 1994).[1]

■ Proximate cause ordinarily is a question of fact for the jury. *Bakkan v. Vondran*, 202 Ill. App. 3d 125, 128, 559 N.E.2d 815 (1990). "It becomes a question of law only where there can be no difference in the judgment of reasonable men on inferences to be drawn." *Bakkan*,

---

[1]Though the Act was repealed in 1995, it was in effect at the time of plaintiff's injury and therefore applies to this case. *Atkins v. Deere & Co.*, 177 Ill. 2d 222, 685 N.E.2d 342 (1997).

202 Ill. App. 3d at 128. "Where inferences may be drawn from facts which are not in dispute, and where reasonable minds would draw different inferences from the facts, then a triable issue exists." *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 756, 645 N.E.2d 207 (1993).

Here, we find the evidence sufficient to create an issue of fact concerning proximate cause. The deposition testimony of Charles Franklin, in which he says the jack handle was down and was the only thing blocking plaintiff's path at the time of the fall, combined with Grave's and Kentgen's testimony that defective jack handles had been a problem on the scaffolding, is enough to defeat defendant's summary judgment motion. Both Franklin and Kentgen testified that while they did not see plaintiff's foot make contact with the jack handle, they saw her fall and that nothing else could have caused the fall. Franklin said there was no other trip hazard in plaintiff's path before she fell.

Defendant cites several cases to support its claim that summary judgment is appropriate. However, in each of these cases the plaintiff provided little more than the fact that an accident occurred. See *Bakkan*, 202 Ill. App. 3d at 131 (no witness to plaintiff's fall and no evidence that plaintiff was even on the scaffold/ladder when he fell); *Monaghan v. DiPaulo Construction Co.*, 140 Ill. App. 3d 921, 924, 489 N.E.2d 409 (1986) (plaintiff had no memory of accident and admitted he did not know how it happened and the only witness did not know why accident occurred); *Snell v. Village of University Park*, 185 Ill. App. 3d 973, 978, 542 N.E.2d 49 (1989) (witnesses who observed fall testified it did not appear plaintiff came into contact with allegedly defective object); *Gentile v. Kehe*, 165 Ill. App. 3d 802, 808, 520 N.E.2d 827 (1987) (no evidence that any negligent act was proximate cause of plaintiff's injury where no one knew cause of accident).

More on point is *Block v. Lohan Associates*, in which the court found that while no one actually witnessed plaintiff's fall, the circumstantial evidence was sufficient to preclude summary judgment. In *Block*, the plaintiff was the wife of an injured construction foreman. Plaintiff alleged that her husband was reaching for a crane line in order to attach a "boatswain's chair" to it when he fell from the ladder he was standing on. Plaintiff claimed the injury occurred when the ball and hook on the end of the crane's line struck her husband or somehow caused him to fall from the ladder he was standing on.

Defendants argued that because there were no witnesses who actually saw plaintiff's husband fall from the ladder, there was insufficient evidence of proximate cause. The court disagreed:

"The present case provides us with sufficient issues of fact as to

proximate cause so as to avoid summary judgment. The testimony of plaintiff's pre-occurrence and post-occurrence witnesses on the scene provides circumstantial evidence of proximate cause, although no witnesses saw Block fall. The crane operator testified that he knew Block was intending to attach the boatswain's chair to the hook so that a worker could weld the column's cover connections. A co-worker saw Block going to retrieve the boatswain's chair and knew that it was intended that either he or Block would get into the chair. Another worker saw Block start up the ladder and later heard Block say 'hold it' before he saw him lying on the ground. A third worker saw Block carrying the boatswain's chair immediately prior to the accident and heard Block's urgent words, 'hold it,' which sounded as if they came from a height level equal to the witness' when the witness was on his ladder." *Block*, 269 Ill. App. 3d at 757.

Here, the witnesses provided at least as much circumstantial evidence, if not more. Not only did the witnesses testify that the jack handle was in the walkway immediately after plaintiff fell, they also testified that the jack handles on that scaffolding presented problems throughout the project. Kentgen said he had tripped on defective jack handles on the same scaffolding. Two witnesses said they did not see anything else that could have caused the fall. In addition, the red mark across the plaintiff's foot can be seen as an indication of contact with the jack handle.

In *McKanna v. Duo-Fast Corp.*, 161 Ill. App. 3d 518, 515 N.E.2d 157 (1987), also a Structural Work Act case, defendant claimed it was entitled to either a new trial or judgment *n.o.v.* because no one saw plaintiff fall from the allegedly defective ladder, or even saw plaintiff on the ladder. The court found this interpretation of the facts "unduly restrictive":

"The directly observed facts in the present instance were that McKanna's co-worker, Wollard, saw McKanna standing on the roof near the boiler room ladder hatchway, saw McKanna place his left hand on the hatchway cover, saw him turn around, apparently in preparation for his descent on the ladder, and he then peripherally perceived McKanna's fall. Wollard did not see McKanna actually on the ladder or McKanna slip from the ladder due to one of the alleged defects in the ladder. These omissions in his direct observations, however, do not automatically make plaintiffs' claims nonactionable. [Citations.] Wollard witnessed McKanna's actions immediately prior to the crucial instant, and those actions clearly permit a reasonable inference that McKanna intended to descend the ladder." *McKanna*, 161 Ill. App. 3d at 527.

Here, as in *McKanna*, Franklin's and Kentgen's testimony

58

concerning plaintiff's actions just before she fell, along with their observations of defective jack handles on the same scaffolding, permits a reasonable inference that the jack handle caused plaintiff's fall. This is enough to avoid summary judgment. *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 285, 633 N.E.2d 1307 (1994) (summary judgment on issue of proximate cause improper where witness heard decedent fall, seconds later saw decedent lying on large patch of ice, and persons approaching decedent slipped on same patch of ice).

CONCLUSION

We find an issue of fact exists concerning proximate cause. We reverse the trial court's order and remand the case for further proceedings.

Reversed and cause remanded.

HALL, P.J., and SOUTH, J., concur.