2020 IL App (2d) 190551-U
No. 2-19-0551
Order filed April 29, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BRIANNA FAY, Special Administrator of the Estate of David Scheck, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-L-753 |
| FIFTY K CORPORATION, DONALD OTWAY, JR., and KRA CONSTRUCTION, INC., | ) ) ) ) ) | Honorable Michael J. Fusz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court
Justices Hudson and Brennan concurred in the judgment

**ORDER**

¶ 1    *Held*: In a negligence action alleging that plaintiff's decedent fell due to dangerous conditions on a staircase outside a bar that the decedent was patronizing, summary judgment for defendants was proper because plaintiff could only speculate that the decedent fell due to the condition of the staircase and not simply due to his extreme level of intoxication at the time of the fall.

¶ 2    Plaintiff, Brianna Fay, special administrator of the estate of David Scheck, appeals the grant of summary judgment in favor of defendants, Fifty K Corporation (Fifty K. Corp.), KRA Construction, Inc. (KRA), and Donald Otway, Jr., on plaintiff's complaint alleging that defendants

were liable for dangerous conditions on a staircase that caused Scheck, a patron of Fifty K Sports Club (Fifty K), to slip and fall while he was using the staircase. We affirm, as we agree with the trial court that there was no issue of material fact on the element of proximate cause such that judgment in favor of defendants was proper.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff's complaint alleged that, on the night of October 17, 2015, Scheck was a patron of Fifty K. While traversing a staircase outside Fifty K's rear entrance, Scheck fell and was fatally injured. Plaintiff alleged that the staircase had dangerous conditions including, but not limited to, an improperly constructed handrail and the presence of debris on the stairs including a loose wooden plank. Plaintiff alleged that these dangerous conditions caused Scheck to fall.

¶ 5     Plaintiff named three defendants as allegedly responsible for the dangerous conditions on the staircase: Fifty K Corp., which owned and operated Fifty K, KRA Construction, which owned premises contiguous to Fifty K, and Otway.[1]

¶ 6     Fifty K Corp. and KRA each answered the complaint and asserted the affirmative defense that Scheck was contributorily negligent in that his impairment from alcohol consumption caused his accident. Otway did not answer the complaint but moved to dismiss it on the ground that he was merely an employee of Fifty K Corp. and had no responsibility for maintaining the staircase in question. The trial court held Otway's motion in abeyance pending discovery in the case.

¶ 7     All three defendants subsequently filed a joint motion for summary judgment, arguing that plaintiff could not prove the element of proximate cause. Defendants cited the undisputed facts

_____

[1] Plaintiff did not allege in what way Otway was responsible for the condition of the staircase. His connection to the staircase was revealed later in the proceedings.

that (1) no one witnessed Scheck's fall; (2) no one had any information about how he interacted with the stairs prior to his fall; and (3) his blood alcohol concentration (BAC) was 0.255 at the time of the autopsy. Defendants argued that, based on these facts, plaintiff was unable to demonstrate that Scheck's fall was caused by a dangerous condition in the staircase and not by some other factor including, most obviously, his severe intoxication.

¶ 8    Defendants submitted with their summary judgment motion the depositions of Officer Eric Ewald, Detective Kenneth Welsch, and Sergeant Dawn Deservi, who were among the Fox Lake police personnel dispatched to Fifty K in response to Scheck's death. Plaintiff filed a response, to which she attached the deposition of Lake County Deputy Coroner Sarah Pendley and affidavits from Renee Scheck (Renee), Scheck's ex-wife, and Dr. Thomas Rudd, a pathologist.

¶ 9    The essential facts are uncontested. At the time of Scheck's death in October 2015, Fifty K Corp. operated a tavern, Fifty K, in part of the ground floor of a building at 50 East Grand Avenue in Fox Lake. KRA also occupied space in the ground floor. Outside the rear entrance of Fifty K was a smoking area for patrons. Several feet from the smoking area was a wooden staircase that led to an apartment that Otway rented on the upper floor of 50 East Grand Avenue.

¶ 10   On October 17, 2015, Scheck and Renee[2] drank alcoholic beverages at several establishments before arriving, after 3 p.m., at Fifty K. While at Fifty K, Scheck and Renee continued to drink alcoholic beverages. Renee later reported to Welsch that, at some point, bartender Margaret Neylon refused to serve Scheck any further alcohol because he was "getting too inebriated." Otway, another bartender on duty that night, reported to Ewald that Scheck was "not terrible but not sober."

---

[2] The two were divorced at the time but had started a relationship again.

¶ 11    At some point in the evening, Scheck exited through the rear door of Fifty K. According to Welsch, Renee reported that Scheck stepped out back to smoke a cigarette while she stepped out front to smoke. When Renee came back inside, Scheck was still absent. After waiting at Fifty K for a time, Renee looked for Scheck at another establishment, Dino's Den, because they had discussed going there next. Scheck was not at Dino's Den and could not reached by cell phone. Renee eventually went home.

¶ 12    Pendley, however, reported a different account from Renee. Renee stated that Scheck went out the back of Fifty K because he needed to vomit and the men's restroom was occupied. When Renee last saw Scheck, he was vomiting on a wall outside Fifty K's rear entrance.

¶ 13    Several hours after Scheck went outside, a patron of Fifty K found Scheck lying face down at the bottom of the wooden staircase behind 50 East Grand Avenue. He was unresponsive. Fox Lake police and emergency personnel were summoned, and Scheck was pronounced dead at the scene. No one had witnessed Scheck fall or observed him on the staircase.

¶ 14    The condition of the wooden staircase was noted in the depositions of Welsch, Deservi, and Pendley. They described the staircase as dark; the only light came from the Fifty K's smoking area several feet away. The staircase had one handrail. Two stacked wooden planks lay lengthwise on the stairs opposite the handrail. The planks extended about halfway up the staircase from the bottom and were not attached to the staircase. Pendley and the officers also described some of the stair treads as being in poor condition, as we note further below.

¶ 15    Several photographs were taken of the scene, but our digitized record contains just one photo, which is black and white, dark, and grainy. The photo seems to depict a long object lying lengthwise along the edge of the staircase. The condition of the stairs themselves is not discernible from the photo.

¶ 16    Ewald was the first police officer to arrive on the scene. He could not recall whether he used the staircase as part of his investigation. He also could not recall seeing any debris on the staircase. Ewald believed that, given the position of Scheck's body, he must have fallen down the stairs.

¶ 17    Welsch, Deservi, and Pendley each climbed the staircase while surveying the scene. Welsch described the staircase as narrow and "extremely steep." He noticed that one of the topmost three stair treads (not the platform) was "very loose" and "wobbly." While descending the stairs, he "almost fell down" on the loose planks.

¶ 18    Deservi also described the staircase as narrow. She noticed that the second stair tread from the top was "loose" and that it "wobbled." Deservi believed there was a "good possibility" that the staircase "was involved in the occurrence," but she could form no opinion because she lacked evidence of where Scheck was standing when he fell.

¶ 19    Pendley testified that an officer warned her about the stairs before she climbed them. She had to be "really careful" near the top of the stairs because the stair treads in that area were "really loose and rickety." The loose planks on the stairs did not cause her to trip because she was aware of them and had space to avoid them. In her view, the planks and the rickety stair treads made the staircase "dangerous." Pendley noted no scratch or claw marks on the handrail.

¶ 20    Pendley testified to her observations of Scheck's body at the scene. When she rolled him over, she detected the odor of an alcoholic beverage. He had lacerations on his nose and eyebrow area, lacerations on both hands, and contusions on the knuckles of his left hand. The wounds on his hands looked "fresh," *i.e.*, sustained that same day, and since Scheck's family made no mention that he had those wounds earlier that day, Pendley concluded that they were the result of the fall.

Later in her testimony, Pendley admitted that it was "hard to determine" if the wounds on Scheck's hands were consistent with a fall down the stairs, but she knew of no other cause.

¶ 21    Pendley testified that the pathologist on the case, Marta Helenowski, determined that Scheck died of a cervical fracture from a fall down the stairs. Pendley opined that a fall from the bottom step would not have generated enough force to fracture Scheck's neck. A fall from halfway up the stairs would have generated enough force, as would, possibly, even a fall from one-quarter of the way up the stairs.

¶ 22    Pendley noted that Scheck's BAC was 0.255 at the time of the autopsy. She explained that such a BAC "would cause significant motor sensory impairment"; one "could fall on a flat surface just by walking" or "could *** lose consciousness."

¶ 23    As to what caused Scheck to fall, Penley testified:

"Q. You don't know what role the planks played in the fall, correct?

A. No, [I] do not.

Q. And you do not know what role the loose stairs played in the fall, correct?

A. Correct.

Q. But you believe that the loose stairs and the planks and all of the other things that you noticed out there that you put in your report led Mr. Scheck to fall down the stairs?

***

A. Yes.

Q. Are you unsure of your findings?

A. No.

Q. You know, just sometimes you're not 100 percent certain. You know, it's probably more true than not. I mean, where are you on this? ***

6

A. I am comfortable saying he was intoxicated, and he fell down the stairs.

Q. Okay.

A. I can't place him on the stairs. I can't place if he was at the very top of the stairs or if he was in the middle of the stairs."

¶ 24    Pendley reiterated later that she was "very comfortable saying that [Scheck] was intoxicated and he fell down the stairs." "[O]utside of that," she was unable to "speak to the mechanism of the fall or where [Scheck] was located on the stairs at the time of the fall." She "had no information from any source as to how any portion of [Scheck's] body interacted with any of the stairs." She acknowledged that intoxication could have been the sole cause of Scheck's fall.

¶ 25    In her affidavit, Renee stated that, when she last saw Scheck on night of the accident, he had no injuries to either hand.

¶ 26    In his affidavit, Rudd stated that he was the former coroner for Lake County. He had "vast experience analyzing bodily tissue and fluid, interpreting medical tests and observations, and diagnosing diseases and injuries." He further stated:

"4. I have had an opportunity to review the following items regarding David Scheck's death and legal case: the Report of Postmortem Examination; the Coroner's Case Report; the Fox Lake Police Reports; 11 color photos of the scene of the accident and of decedent; the affidavit of Renee Scheck; the deposition transcript of Sarah Pendley; the deposition transcript of Dawn Deservi; the deposition transcript of Kenneth Welsch; and the deposition transcript of Eric Ewald.

5. Several factors were of particular interest to me, including but not limited to: the loose boards laying on the stairs; the fact that the stairs near the top of the staircase were reported to be rickety; the position of Mr. Scheck's body (face down at the bottom of the

stairs); the wounds on Mr. Scheck's hands; the location of Mr. Scheck's feet on the stairs and the loose boards; and the fact that Mr. Scheck's neck was broken in the fall.

6. The wounds on Mr. Scheck's hands are of the type and in the locations I would expect to find on a person who had fallen from a great height, and was trying to catch himself on something as he fell. There is evidence that these wounds were not in existence prior to the fall.

7. It is more probably true than not that the wounds on Mr. Scheck's hands were defensive wounds, created during the fall as he attempted to regain his balance and/or keep from falling further.

8. Had Mr. Scheck been unconscious as he fell, he would not have sustained defensive wounds on his hands as demonstrated. Accordingly, it is more probably true than not that Mr. Scheck was conscious and alert as he fell.

9. The force needed to break a human being's neck is significant. That force is greater than would occur had Mr. Scheck simply fallen on his face at the bottom of the stairs. The broken neck indicates that Mr. Scheck fell from more than halfway up the staircase. Accordingly, it is more probably true than not that Mr. Scheck fell from a height of more than halfway up the staircase.

10. Based on the testimony of Kenneth Welsch, Dawn Deservi, and Sarah Pendley, the staircase was very steep and some of the actual steps near the top were loose, wobbly, and rickety. In addition, they reported that there were loose boards or planks laying on the staircase, as can be seen in the pictures.

11. The loose boards on the staircase are an obvious tripping and slipping hazard, and would be encountered by a person descending the stairs at a sufficient height to create a fall of great enough force to break a man's neck.

12. The rickety stairs at the top of the staircase, coupled with the loose boards laying on the staircase, create precisely the type of fall hazard at precisely the height to produce the fatal injuries observed in Mr. Scheck.

13. In summary, I give the following opinions to a reasonable degree of medical certainty:

a. Mr. Scheck's fall was caused by the rickety stairs at the top of the staircase, the loose boards laying on the staircase, or a combination of the two;

b. Mr. Scheck began to fall from at least as high as the point where one would first encounter the loose boards while descending the staircase;

c. Mr. Scheck suffered defensive wounds on his hands while falling; and

d. Mr. Scheck was conscious and alert at the time of and during the fall."

¶ 27 The trial court issued a written order granting defendants' motion for summary judgment but providing no rationale. The order reflects that a hearing was held on the motion, but no report of proceedings appears in the record. "Although our review of a summary judgment ruling is *de novo* [citation], it is our preference to have before us whatever rationale the trial court offered in deciding the motion for summary judgment." *In re Marriage of Dann*, 2012 IL App (2d) 100343, ¶ 3.

¶ 28 Plaintiff filed this timely appeal.

¶ 29                                     II. ANALYSIS

¶ 30    Plaintiff argues that summary judgment was inappropriate because material questions of fact exist as to what caused Scheck to fall from the staircase. We disagree.

¶ 31    We begin with the standards governing summary judgment. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In determining whether there exists a genuine issue of material fact, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id.* at 43. A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. *Id.* In order to survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to judgment. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. *Adams*, 211 Ill. 2d at 43. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, our review is *de novo*. *Id.*

¶ 32    We move to the underlying substantive standards. Plaintiff's complaint alleges that dangerous conditions existed on the staircase, namely that it was in disrepair and cluttered with debris. At some points in her complaint, plaintiff alleges that defendants both created the conditions and allowed them to continue, while at other points plaintiff alleges that defendants

created the conditions *and/or* allowed them to continue. A defendant who simply allows a dangerous condition on its premises to persist is subject to premises liability, but a defendant whose conduct gives rise to the dangerous condition is also subject to liability in negligence. See *Garcia v. Goetz*, 2018 IL App (1st) 172204, ¶ 31; *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 54. This distinction does not impact this appeal, however, because the sole point of contention is proximate cause, an element of both negligence and premises liability. See *Bell v. Hutsell*, 2011 IL 110724, ¶ 11 (negligence); *Hope v. Hope*, 398 Ill. App. 3d 216, 219 (2010) (premises liability). The parties argue specifically over just one of the dual aspects of proximate cause. "The term 'proximate cause' embodies two distinct concepts: cause in fact and legal cause." *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. " 'Cause in fact' is established where there is reasonable certainty that the injury would not have occurred 'but for' the defendant's conduct or where a defendant's conduct was a 'substantial factor' in bringing about the harm." *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. By contrast, legal cause involves the policy question of whether the defendant should be held responsible for the harm that he, in fact, caused. *Id.* "Legal cause, therefore, is established only when it can be said that the injury was reasonably foreseeable." *Id.* Here, the parties' dispute on proximate causation is limited to whether defendants' conduct was the cause in fact of Scheck's fatal injury.

¶ 33    An injury may have more than one cause in fact, and the defendant's conduct need not be the last or nearest cause as long it is *a* cause. *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, ¶ 21 (citing Illinois Pattern Jury Instructions, Civil, No. 15.01 (2011)). Though proximate causation is ordinarily a question of fact to be resolved at trial, it may be settled as a matter of law by the trial court where the facts as alleged show that the plaintiff would never be entitled to recover. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257-58 (2004). The plaintiff in a negligence

or premises liability case cannot resist summary judgment by citing the fact that an accident occurred and resorting to speculation, surmise, or conjecture as to its cause. *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 974 (1990). Rather, the plaintiff must present "positive and affirmative proof" establishing with "reasonable certainty" that the defendant's conduct caused the plaintiff's injury. *Id.*

¶ 34    Causation may be proven entirely through circumstantial evidence. "That is, causation may be established by facts and circumstances that, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 35. However, to support an inference of causation,

> "circumstantial evidence must show a probability of the existence of the fact to be inferred. [Citation.] Although the circumstantial evidence need not exclude all other possible inferences, it must be of such a nature and so related as to make the conclusion reached the more probable. [Citation.] Where from the proven facts the non-existence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that it exists is a matter of speculation, surmise, and conjecture. [Citation.]" *Romano v. Municipal Employees Annuity & Benefit Fund of Chicago*, 402 Ill. App. 3d 857, 864-65 (2010).

Thus, "a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only probable, not merely possible, conclusion that can be drawn therefrom." *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 796 (1999).

¶ 35    Cases applying the foregoing principles highlight the difficulties that a plaintiff can face in resisting summary judgment in a slip-and-fall case that is based entirely on circumstantial evidence. We discuss four representative cases: *Berke*, 2016 IL App (1st) 150397, *Strutz v. Vicere*,

12

389 Ill. App. 3d 676 (2009), *Majetich v. P.T. Ferro Construction Co.*, 389 Ill. App. 3d 220 (2009), and *Kellman*, 202 Ill. App. 3d 968. In each of these cases, no witness observed the fall, but the plaintiff(s) attempted to attribute the fall to a defect or dangerous condition in stairs or a walking surface maintained by the defendant(s). The trial court granted summary judgment for the defendant(s) on the issue of proximate cause, and the appellate court affirmed, finding that the plaintiff(s) failed to establish with reasonable certainty that the condition caused the fall. See *Berke*, 2016 IL App (1st) 150397, ¶¶ 37-43; *Strutz*, 389 Ill. App. 3d at 680-82; *Majetich*, 389 Ill. App. 3d at 224-27; *Kellman*, 202 Ill. App. 3d at 974-76.

¶ 36    In *Kellman*, the plaintiff sued a country club, alleging that the defective condition of a shower stall caused her husband, the decedent, to fall while showering. The evidence at the summary judgment hearing was that the decedent was helped to the shower area by Robert Stempel, a member of the club, after Stempel observed that the decedent was "unsteady on his feet," was "reeling," and was "us[ing] the wall to keep himself from falling." *Kellman*, 202 Ill. App. 3d at 970. While Stempel was showering in a neighboring stall, he heard two bumps and, walking to the decedent's stall, observed him lying face down, unconscious. The decedent was positioned such that his head and torso were on the floor of the stall's changing area, his legs were on the curb that separated the changing area from the shower basin, and his feet were pointing down in the basin. He was naked and wet and there was soap in his hair. The water was still running. The decedent was found to have sustained a cervical spinal fracture. The plaintiff claimed that the decedent told her that he slipped in the shower. The plaintiff produced affidavits from medical experts who opined that the decedent was injured, and ultimately died, as a result of falling in the shower. The plaintiff also produced the affidavit of an engineer and safety expert who opined that the shower stall in which the decedent fell was unreasonably dangerous because

the floor would have become slippery and dangerous when wet and soapy, and because there were not enough grab bars on the walls or adhesive strips on the floor. *Id.* at 970-72, 974-75.

¶ 37    The appellate court "found nothing in the record from which it can be inferred that any alleged act or omission of defendant was the proximate cause of decedent's injuries." *Id.* at 974. The plaintiff had not examined the floor of the stall immediately after the incident, and, though the decedent had told her that he slipped, the plaintiff admitted that she did not know the cause of the slip or precisely where the decedent slipped. The court also noted a possible alternative cause of the decedent's fall, in that he appeared unsteady on his feet prior to entering the shower stall. Thus, it was "reasonable to conclude that several factors may have caused decedent's fall." *Id.* at 976. Regarding the affidavit of the safety expert, the court commented: "The *possibility* that the alleged unreasonably dangerous shower stall and basin had caused defendant to slip and fall is insufficient to establish a causal relationship between defendant's alleged negligence and decedent's injuries." (Emphasis added.) *Id.* at 974. The plaintiff failed to "establish with reasonable certainty that decedent's injury was the proximate result of decedent's negligence." *Id.* at 976.

¶ 38    In *Majetich*, the plaintiff alleged that the decedent fell due to a dangerous condition in a strip mall's parking lot. The plaintiff sued the owner of the mall and the contractor who was repaving the parking lot at the time of the accident. The parking lot's pavement had been removed but not replaced. The plaintiff alleged that there was a one-to-two foot step up from the parking lot to the sidewalk. The plaintiff's 89-year-old decedent was stepping up from the parking lot when she fell. Immediately after the fall, the decedent told others that the curb appeared higher than normal and that, as she reached for a pole for support, she fell. There was evidence that, at the time of the accident, decedent had several medical conditions affecting her balance and vision. *Majetich*, 389 Ill. App. 3d at 221-23. The appellate court found "nothing in the record from which

14

it can be inferred that any alleged act or omission of defendants was the proximate cause of the decedent's injuries." *Id.* at 227. There was "insufficient evidence to determine whether [the decedent] lost her balance due to one of her medical conditions, or to rule out that she tripped or slipped for any one of the other countless reasons that people fall." *Id.* "In Illinois," the court noted, "[a] proper inference cannot be based on mere conjecture or speculation as to what possibly happened to cause the injury." *Id.* The plaintiff failed to carry her burden on causation, as she "can only present evidence that decedent's injuries are *possibly* related to the alleged negligence of defendants[.]" (Emphasis added.) *Id.*

¶ 39 The plaintiff in *Strutz* sued her landlords, alleging that her husband, the decedent, fell due to a dangerous condition on the back staircase in the defendant's building. The plaintiff found the decedent sitting up against the wall at the bottom of the stairs. He reported to her that he " 'fell down over the railing.' " *Strutz*, 389 Ill. App. 3d at 677. The decedent later told the responding paramedics that he had fallen down the stairs. The plaintiff testified that the stairs were in good condition and that she had had no problem with them. However, she presented the affidavit of an architect who opined that the stairs were dangerous, and violated the city building code, because the treads were too small, the handrails were inadequate, and the staircase was inadequately lit. There was evidence that the decedent had health problems, including poor circulation in his legs; that he would sometimes walk backwards down the stairs; and that he told a responding paramedic that he was walking backwards down the stairs when he slipped and fell. *Id.* at 678-80.

¶ 40 In affirming the grant of summary judgment for the defendants, the appellate court found that none of the evidence "addresses the issue of what caused [the decedent's] fall." *Id.* at 681. The violations of the building code did not in themselves establish causation. The plaintiff raised at most "[t]he *possibility* that the allegedly unreasonably dangerous staircase had caused [the

decedent] to slip and fall," and this showing was "insufficient to establish the necessary causal relationship between [the defendants'] alleged negligence and [the decedent's] injuries." (Emphasis added.) *Id.*

¶ 41    In *Berke*, the plaintiff fell while exiting an apartment building. He and his wife sued the owners and managers of the building, alleging that he fell due to design defects in the exit area. To exit the building, a person had to walk out an interior door "onto or over a 7 1/2-inch threshold, step down 2 1/4 inches onto the 10 1/2-inch landing, and then up the three stairs out through the exterior door." *Berke*, 2016 IL App (1st) 150397, ¶ 6. The building's doorman witnessed the plaintiff exit through the interior door. A short time later, the doorman heard a noise and, going to investigate, observed the plaintiff lying on the floor of the vestibule area between the two doors. His feet were several inches from the interior door. He had no memory of falling. The plaintiff submitted affidavits from an accident reconstructionist, an architect, and an emergency room physician. The reconstructionist and architect averred that the interior door onto the vestibule violated building codes and industry standards because the threshold was too high and the door closed too quickly. The physician stated that he had reviewed the plaintiff's medical records and found no acute conditions that would have impacted the plaintiff's balance on the day of the accident. Each affiant also expressed an opinion on causation, but the trial court struck those opinions as speculative. The plaintiffs relied on the following evidence as proof that the plaintiff fell because he tripped on the threshold or was pushed forward by the interior door: "(i) the expert's affidavits, (ii) the height of the threshold, (iii) the position in which [the plaintiff] was found, (iv) the abrasions on [the plaintiff's] knees and face, (v) the absence of any other reason for

the fall, (vi) a prior fall in the vestibule,[3] and (viii) [*sic*] testimony that [the plaintiff] was walking normally and appeared healthy on the day of the accident[.]" *Id.* ¶¶ 6-9, 23-29, 36.

¶ 42    The appellate court agreed with the trial court that there was no question of material fact as to causation.  The appellate court held that the purely circumstantial evidence on which the plaintiffs relied was inadequate.  The court remarked that the evidence of code violations and departures from industry standards did not, standing alone, establish causation.  The court held that, "[a]lthough a trier of fact could infer that [the plaintiff], who was observed to be walking at a rapid pace, tripped over the threshold or was propelled forward by the door, it is equally likely that a jury could conclude that he fell for reasons unrelated to the condition of the premises." *Id.* ¶ 37.

¶ 43    In their analyses, *Majetich* and *Kellman* distinguished *Wright v. Stech*, 7 Ill. App. 3d 1068 (1972), another slip-and-fall case.  As in *Majetich*, *Kellman*, and the other cases we have discussed, the plaintiff in *Wright* relied entirely on circumstantial evidence.  The plaintiff in *Wright* sued the owner of an apartment building for negligence after the decedent fell while descending stairs between floors.  At the jury trial, a tenant in the building testified that the decedent left the tenant's apartment and began descending the stairs.  From inside her apartment, the tenant heard the decedent descend two or three stairs and then heard a loud thump.  Looking out of her apartment, the tenant saw the decedent lying on the landing between the second and third floors.  At the time, the staircase was "littered" or "covered" with debris and "was dark, the only illumination being provided by the skylight, which was also partially covered with debris." *Id.* at 1069-70.  The jury found in favor of the plaintiff, but the trial court directed a verdict in favor of the defendant.  The appellate court reversed.  The court cited the condition of the staircase and the fact that the decedent

---

[3] The court did not elaborate on this "prior fall" or mention it further in its analysis.

17

was apparently in good health on the day of the accident. The court held that "the jury could reasonably have concluded that the decedent fell down the stairs and that her fall was caused by the littered condition of the stairway and the darkness of the stairwell." *Id.* at 1070.

¶ 44 The courts in *Kellman* and *Majetich* found *Wright* distinguishable because there was evidence that the decedents in *Kellman* and *Majetich* had physical conditions impacting balance and coordination, and it was just as probable that the decedents fell because of these conditions and not because of any dangerous condition on the premises. See *Majetich*, 389 Ill. App. 3d at 227; *Kellman*, 202 Ill. App. 3d at 975-76.

¶ 45 As the foregoing cases illustrate, the element of causation in a negligence or premises-liability case requires "positive and affirmative proof" establishing with "reasonable certainty" that the defendant's conduct caused the injury. See *Kellman*, 202 Ill. App. 3d at 974. Where the plaintiff relies on circumstantial evidence, the plaintiff must establish more than just the possibility that the defendant's conduct contributed to the plaintiff's injury. See *Wiegman*, 308 Ill. App. 3d at 796. This burden is onerous enough simply given that, as the court *Majetich* noted, there are "countless" reasons why people slip and fall (389 Ill. App. 3d at 227), and the plaintiff must establish, among that universe of possibilities, the greater probability that the defendant caused the injury. See *Berke*, 2016 IL App (1st) 150397, ¶ 37 ("Although a trier of fact could infer that [the plaintiff], who was observed to be walking at a rapid pace, tripped over the threshold or was propelled forward by the door, it is equally likely that a jury could conclude that he fell for reasons unrelated to the condition of the premises."); *Wiegman*, 308 Ill. App. 3d at 796. The task becomes even more difficult where there is affirmative evidence to support explanations that rival the plaintiff's causation theory, such as where the decedent was walking down the stairs in an

unorthodox manner (*Stultz*, 389 Ill. App. 3d at 680) or had a physical condition impacting balance and coordination (*id.*; *Majetich*, 389 Ill. App. 3d at 227; *Kellman*, 202 Ill. App. 3d at 975-76).

¶ 46    Here, apparently, no one witnessed Scheck fall, observed him on the staircase, or heard any sound that may have been related to his fall.  Nonetheless, there is no dispute that Scheck fell down the stairs and suffered fatal injuries as a result.  Also not in dispute are facts relating to the condition of the stairs:

> (1) the stairs were dark, narrow, and extremely steep;
>
> (2) one or more stair treads near the top of the staircase were "rickety," "wobbly," or "loose, and there were unattached planks running halfway up along the edge of the stairs;
>
> (3) based on (1) and (2), the stairs were "dangerous"; and
>
> (4) Welsch "almost fell down" on the loose planks while descending the stairs.

Some of these "facts" are the impressions and opinions of the police officers involved in the investigation of Scheck's death, but they are nonetheless uncontested for purposes of this appeal.

¶ 47    Also uncontested, however, are critical facts relating to Scheck's physical condition at the time of the fall.  He had a BAC of at least 0.255,[4] and this level of intoxication (as described by Pendley) "would cause significant motor sensory impairment"; one "could fall on a flat surface just by walking" or "could *** lose consciousness."

¶ 48    These undisputed facts align this case with *Kellman*, *Strutz*, and *Majetich*, and distinguish it from *Wright*.  In *Kellman*, *Strutz*, and *Majetich*, the court found that the decedent's physical condition(s), affecting balance and coordination, made it just as likely as not that the decedent's

---

[4]  For perspective, Scheck's level of intoxication was over three times the legal limit for operation of a motor vehicle in Illinois.  See 625 ILCS 5/11-501(a)(1) (West 2014).

fall was unrelated to the dangerous condition of the stairs or walking surface involved. Likewise here, we cannot say that it is more likely that Scheck fell because of the condition of the staircase than because of some unrelated reason, particularly his gross inebriation.

¶ 49    Our conclusion is not changed by the opinions of Pendley and Rudd as to causation. Pendley's opinion evolved under examination. She began by testifying that she did not know what role the rickety stairs and loose planks played in Scheck's fall. She then claimed that those conditions "led" to Scheck's fall. When pressed, she offered the less committal assessment that Scheck "was intoxicated, and he fell down the stairs." She could say nothing "outside of that," *i.e.*, nothing about the mechanics of the fall. She also later acknowledged that intoxication could have been the sole cause of Scheck's fall.

¶ 50    Our discussion of Rudd's affidavit must begin with its most glaring deficiency: his failure to discuss Scheck's BAC and its likely effects. Rudd might have been addressing the BAC tacitly when he opined that Scheck must have been "conscious and alert as he fell" because he had defensive wounds on his hands. This opinion begged the question of whether Scheck could have been "conscious and alert" yet had his balance and coordination so compromised by intoxication that he could have fallen even on a flat surface. If Rudd did not regard this as a physiological possibility, he should have explained why.

¶ 51    Notably, while Rudd was convinced that Scheck did not fall of his own accord, Rudd could not decide which of the hazards on the staircase was the cause. He hedged, suggesting that Scheck fell from one or a combination of hazards, *i.e.*, if the rickety treads at the top did not unbalance Scheck—or did not unbalance him enough—then the loose planks would have sent him falling. Rudd's opinion leaves open the possibility that Scheck safely cleared the rickety treads only to

slip, because of his extreme intoxication, on one of the hazard-free treads that the record suggests existed between the rickety treads and those treads on which the loose planks lay.

¶ 52     There is yet another possibility:  Scheck fell from the platform of the staircase before setting foot on any of the treads.  Notably, though Rudd identified a minimum height—halfway up the ladder—from which Scheck must have fallen, he did not assert that Scheck must have had his feet on the treads themselves when he fell.   Scheck's intoxication might have caused him to stumble as he approached the stairs—or to forget that there even were stairs as he stepped off the platform.[5]  In either case, he could have been sent headlong down the staircase and ended up in the position in which he was found.  We are conjecturing, admittedly—but the undisputed facts permit nothing more definitive.  None of the foregoing theories, including plaintiff's, is more likely than the others, and this is fatal to a circumstantial case, which cannot be based on speculation.

¶ 53     *Wright* is distinguishable here for the same reason it was found distinguishable by the courts in *Kellman* and *Majetich:*  the decedent in *Wright* was in good health at the time of her fall (7 Ill. App. 3d at 1070), but here Scheck's level of intoxication provided an explanation for his fall that was as viable as plaintiff's theory of causation.

¶ 54     Plaintiff relies on *Radtke v. Schal-Bovis*, 328 Ill. App. 3d 51 (2002), and *Block v. Lohan Associates*, 269 Ill. App. 3d 745 (1993).  In *Block*, the wife of a disabled construction worker, Block, sued several parties involved in a construction project.  The plaintiff alleged that Block fell

---

[5] We say "forget" because we presume that Scheck was descending the stairs because he had previously ascended them.  The record shows no other means by which Scheck reached the upper level outside the building.  It is not clear why Scheck went up the stairs to begin with, but most likely he had forgotten, in his intoxication, how to return to the bar.

off a ladder due to the negligence of a crane operator who was maneuvering the whip line of the crane over to Block while he stood on a ladder waiting to attach a boatswain's chair to the line. The plaintiff alleged specifically that the crane operator lowered the line " 'in the blind,'' without some form of communication from Block, and that the hook and ball attached to the line struck Block or otherwise caused him to fall from the ladder. The defendants, noting that no witness observed Block fall from the ladder, moved for summary judgment on the issue of proximate cause. The trial court agreed with the defendants and granted them summary judgment as to causation. The appellate court reversed because, though no witness saw Block fall from the ladder, the "pre-occurrence and post-occurrence witnesses" provided circumstantial evidence of proximate cause. These witnesses saw Block on the ladder, saw the crane operator lower the line in Block's direction, heard Block say " ' "Hold it,' " and then heard a thump and observed Block on the ground. In addition, an accident reconstruction expert testified in support of the plaintiff's theory. The appellate court held that this evidence raised a material question of fact as to causation. *Id.* at 751-54, 757.

¶ 55    In *Radtke*, the plaintiff fell while traversing a scaffold on a construction project. She sued the general contractor on the project. Her theory was that she fell because she tripped on the handle of a jack that was used to raise the scaffold, and that the general contractor was negligent for leaving the handle lying across the surface of the scaffold rather than in an upright position. Two of the plaintiff's coworkers testified that they saw the plaintiff fall but did not see what caused the fall. However, both coworkers saw a jack handle lying across the surface of the scaffold near where the plaintiff fell. Immediately after the accident, the plaintiff told one of the coworkers that she tripped on a jack handle. The other coworker observed no overlapping planking in the area that might have caused the fall. Both coworkers believed that the jack handle was the only

explanation for the fall. The plaintiff testified that she had no recollection of what caused her fall, but she believed a jack handle was responsible because this was what eyewitnesses reported, and these reports were consistent with a red mark that the plaintiff had on her foot following the accident. The plaintiff and the two coworkers also testified that there was a recurring problem on the jobsite with jack handles left lying across the walking surface of the scaffold. *Radtke*, 328 Ill. App. 3d at 52-54.

¶ 56    The trial court granted summary judgment for the general contractor, but the appellate court reversed. The court relied on *Block*, finding as much, if not more, circumstantial evidence to support the plaintiff's case than was presented in *Block. Id.* at 56-57.

¶ 57    *Radtke* and *Block* are distinguishable. In each case, observations contemporaneous with the accident supported the inference that the defendant's conduct was the cause. Here, by contrast, there were no observations contemporaneous with Scheck's fall. Another significant difference is that neither in *Radtke* nor *Block* was there evidence of an equally probable cause for the injury that did not involve the defendant's conduct. Here, Scheck's intoxication furnished just such an alternative cause. Rudd's opinion was flawed because he did not address the possibility that Scheck, though "conscious and alert" at the time, was so intoxicated that his fall had nothing to do with the condition of the stairs.

¶ 58    Finally*,* plaintiff asserts that defendants have raised, for purposes of summary judgment, the issue of contributory negligence premised on Scheck's intoxication. This was improper, plaintiff claims, because defendants did not plead contributory negligence as an affirmative defense. Plaintiff is mistaken; defendants Fifty K and KRA indeed did plead the affirmative defense of contributory negligence based on Scheck's intoxication (Otway, for his part, did not answer the complaint before moving for summary judgment). Regardless, defendants' argument

for purposes of summary judgment is not based on the doctrine of contributory negligence, or more precisely, comparative fault. If it were, defendants would have to demonstrate that plaintiff's fault was more than 50% of the cause of injury in order to defeat plaintiff's claim. See *Gillespie Community Unit School District No. 7, Macoupin County v. Union Pacific RR. Co.*, 2015 IL App (4th) 140877, ¶ 197; 735 ILCS 5/2-1116 (West 2014). Instead, defendants' argument is that their conduct was not a proximate cause of plaintiff's injury, thus negating any question of comparative fault. See *Strutz*, 389 Ill. App. 3d at 682 (distinguishing, for purposes of summary judgment, between contributory negligence barring a plaintiff's recovery and lack of evidence of proximate cause).

¶ 59    We recognize that summary judgment should be granted only when the movant's right to that remedy is clear and free from doubt. See *Adams*, 211 Ill. 2d at 43. Here, defendants established their right as it is clear that plaintiff has not presented "positive and affirmative proof" establishing with "reasonable certainty" that the defendants' conduct caused Scheck's fatal injury. *Kellman*, 202 Ill. App. 3d at 974. Thus, we affirm the grant of summary judgment.

¶ 60                                    III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 62    Affirmed.